UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LEE BRINSON, II,

    Petitioner,

v.

JEFF TANNER,

    Respondent.

Case No. 23-cv-12658

Honorable Robert J. White

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

I. Introduction

Petitioner Michael Lee Brinson, II is currently incarcerated at the Macomb Correctional Facility in Michigan. He seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). The Court directed respondent to answer the petition. (ECF No. 5). Brinson did not file a reply. For the following reasons, the Court denies the petition.

II.     Background

In 2017, Brinson pled guilty to one count of unarmed robbery in Kalamazoo County Circuit Court. The state circuit judge sentenced him to 14 months to 30 years in prison. (*See* ECF No. 6, PageID.49).

Brinson was placed on parole on January 20, 2021, for a period of one year. (ECF No. 10-1, PageID.91-92). Between July and December 2021, Brinson committed several crimes in Florida, where he was sentenced to jail time. (ECF No. 10-2, PageID.96). To continue supervising Brinson during the pendency of these criminal charges, the Michigan Parole Board extended his term of parole an additional six months, through July 20, 2022. (ECF No. 10-3). Michigan authorities extradited Brinson on March 13, 2022. (ECF No. 10-2, PageID.96). After his conviction on the Florida charges, the Michigan Parole Board extended his term of parole an additional three months, through October 10, 2022. (ECF No. 10-2, PageID.96; ECF No. 10-4).

In the interim, Brinson was arrested in Michigan for malicious destruction of personal property ($1,000 or more, but less than $20,000), resisting and obstructing a police officer, and disturbing the peace. On September 13, 2022, Brinson pled guilty to reduced charges of attempted resisting and obstructing and malicious destruction of property ($200 or more, but less than $1,000) in Michigan state district court. The state district judge sentenced him to 30 days in jail with credit for time

served. *See* MiCourt Case Search, Case No. 2022-221108FY-FY, https://micourt.courts.michigan.gov/case-search/court/D08/case-details?caseId=2022-221108FY-FY-01&tenantKey=D08-39-0629439-00-00&searchUrl=%2Fcourt%2FD08%2Fsearch%3FfirstName%3DMichael (last visited October 7, 2024).[1]

While out on bond for these charges, Brinson was arrested for assault on August 6, 2022. (ECF No. 10-2, PageID.95-96). *See* MiCourt Case Search, Case No. 2022-2206099SM-SM, https://micourt.courts.michigan.gov/case-search/court/D08/case-details?caseId=2022-2206099SM-SM-01&tenantKey=D08-390629439-00-00&searchUrl=%2Fcourt%2FD08%2Fsearch%3FfirstName%3DMichael (last visited October 7, 2024). This case was later dismissed and reissued with an additional fourth-degree criminal sexual conduct charge. *See* MiCourt Case Search, Case No. 2022-2206099SM-SM; MiCourt Case Search, Case No. 2023-2300316FY-FY, https://micourt.courts.michigan.gov/case-search/court/D08/case-details?caseId=2023-2300316FY-FY-01&tenantKey=D08-39-0629439-00-00&searchUrl=%2Fcourt%2FD08%2Fsearch%3FfirstName%3DMichael (last visited October 7, 2024). The Parole Board extended Brinson's parole for an additional two months, through December 20, 2022. (ECF No. 10-5).

---

[1] The Court takes judicial notice of Brinson's state criminal proceedings that are not otherwise detailed in the record. *See Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).

Brinson was later arraigned on four charges of violating the terms of his parole on September 9, 2022, based on the pending assault charges from August 2022. (ECF No. 10-2, PageID.95). A formal hearing on the parole violation charges was initially scheduled for September 19, 2022, but an administrative adjournment was ordered until November 4, 2022. (ECF No. 10-2, PageID.95). Brinson then requested another adjournment, which kept the formal hearing in adjournment status until January 17, 2024. (ECF No. 10-2, PageID.95). Although his parole term was set to expire on December 20, 2022, Brinson remained incarcerated pending the disposition of the parole violation hearing. (*See* ECF No. 10-2, PageID.95; ECF 10-5).

On May 2, 2023, Brinson pled guilty in state district court to two counts of misdemeanor assault or assault and battery in exchange for the dismissal of the fourth-degree criminal sexual conduct charge. The state district judge sentenced him on May 17, 2023, to 59 days in jail, with credit for 59 days served. MiCourt Case Search, Case No. 2023-2300316FY-FY.

On October 20, 2023, Brinson filed the current petition for habeas relief, in which he appears to solely challenge the above May 2023 sentence. (ECF No. 1, PageID.1). He claims that he is "being held although [the] judge granted time served. (guilty plea)." (ECF No. 1, PageID.5.)

4

Brinson received the formal hearing on his parole violations the following January. Case details from the state district court were admitted, establishing Brinson's May 2023 convictions for assault and battery. The hearing officer found that Brinson violated the terms of his parole by committing criminal acts and engaging in abusive, assaultive, and threatening behavior. (ECF No. 10-2, PageID. 95). On February 14, 2024, the Michigan Parole Board revoked Brinson's parole and sentenced him to 24 months confinement. (ECF No. 10-2, PageID.95).

III. <u>Analysis</u>

 A. *Jurisdiction to Challenge 2023 Convictions*

As an initial matter, Brinson cannot challenge his 2023 convictions for assault and battery because he already served the sentence imposed for those offenses.

28 U.S.C. § 2254 requires that a habeas petitioner be "in custody under the conviction or sentence under attack at the time" the petition is filed in the federal court. *Maleng v. Cook,* 490 U.S. 488, 490-91 (1989) (cleaned up). A habeas petitioner is no longer "in custody" once the imposed sentence is served. *Id.* at 492. Nor is a habeas petitioner "in custody" when serving a sentence that does not stem directly from the conviction subject to habeas review. *See Steverson v. Summers*, 258 F.3d 520, 523 (6th Cir. 2001); *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 401 (2001) ("Coss is no longer serving the sentences imposed pursuant to his 1986 convictions, and therefore cannot bring a federal habeas petition directed

5

solely at those convictions."); *Steinberg v. Police Ct. of Albany, N. Y.*, 610 F.2d 449, 453-54 (6th Cir. 1979) (petitioner not "in custody" and not entitled to habeas relief because "[h]is present confinement is the result of his parole violation, not his state conviction"); *Evans v. Birkett*, No. 10-14787-BC, 2012 U.S. Dist. LEXIS 3092, at *5-6 (E.D. Mich. Jan. 11, 2012) (holding that the defendant was not "in custody" because he challenged a conviction for which he already "served . . . and unsuccessfully attacked . . . on state collateral review.").

Because the "in custody" requirement is jurisdictional, a federal court may not entertain habeas relief when the petitioner is no longer "in custody." *See Hautzenroeder v. Dewine*, 887 F.3d 737, 740 (6th Cir. 2018). Here, Brinson's sentence stemming from his 2023 assault and battery convictions expired before the instant petition was filed. So he is not currently "in custody" on account of these convictions. And the mere fact that the 2023 convictions were the basis for revoking Petitioner's parole on his 2017 unarmed robbery conviction does not mean that Petitioner was in actual or constructive custody *on his 2023 convictions*. *See Steinberg*, 60 F.2d at 453-54. Therefore, the Court lacks subject matter jurisdiction to entertain a habeas challenge to his 2023 convictions.

  B.  *Parole Extension and Revocation*

Brinson is also not entitled to habeas relief from the extension and revocation of his parole on the 2017 unarmed robbery conviction. Although Brinson suggests

6

he was denied due process by the Parole Board's decision to extend his parole, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). The Sixth Circuit has repeatedly held that Michigan's parole statute does not create a due process liberty interest in being paroled before a criminal sentence expires. *See Crump v. Lafler*, 657 F.3d 393, 404-05 (6th Cir. 2011); *Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010).

Similarly, there is no clearly established due process violation when an individual discharged from parole is returned to that status, for example, by an extension of the parole term. *See Akrawi v. Remillet*, 504 F. App'x 450, 452-53 (6th Cir. 2012) (concluding that there is no clearly established right to a hearing when an individual is "return[ed] to parole, as opposed to a return to prison"). And because there is no liberty interest in early release on parole, Brinson cannot challenge parole extension procedures on due process grounds. *See Kamppi v. Ghee,* No. 99-3459, 2000 U.S. App. LEXIS 4160, at *4-5 (6th Cir. Mar. 14, 2000) ("Kamppi has no liberty interest in parole under the Constitution or state law, and he therefore may not challenge any procedure used to deny him parole or extend his parole release date.") (citations omitted); *Hulvey v. Curtin*, No. 10-903, 2013 U.S. Dist. LEXIS 134788, at *18 (W.D. Mich. Aug. 20, 2013); *see also Swihart v. Wilkinson*, 209 F.

Appx. 456, 458 (6th Cir. 2006) (the plaintiff failed to state a claim for a procedural due process violation regarding denial of parole because "the state of Ohio has not created a liberty interest in parole eligibility").

Moreover, numerous district courts in the Sixth Circuit "have held that, because there is no liberty interest in early release on parole, then, by extension, there is no liberty interest in full release upon the expiration of a parole order." *Alonzo v. Burt,* No. 16-559, 2016 U.S. Dist. LEXIS 94969, at *12 (W.D. Mich. Jul. 21, 2016) (collecting cases). So the Michigan Parole Board's decision to extend Brinson's parole does not implicate substantive or procedural due process.

The revocation of Brinson's parole raises a different question. The United States Supreme Court has held "that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Nonetheless, a parolee is entitled to some form of due process before parole is revoked. The Supreme Court identified "two important stages in the typical process of parole revocation." *Id.* at 485. "The first stage occurs when the parolee is arrested and detained." *Id.* "The second occurs when parole is formally revoked." *Id.*

Due process requires that there be an initial hearing shortly after the parolee's arrest to determine whether probable cause exists to believe the parolee violated the

8

terms of parole. The hearing should be conducted before an independent examiner. *Id.* at 485-86. The parolee should be given notice of the hearing stating the nature of the charged parole violations. *Id.* at 486-87. At the conclusion of the preliminary hearing:

> The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position. Based on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision.

*Id.* at 487.

The second stage of the parole revocation process involves the final parole revocation hearing.

> This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.

*Id.* at 488.

The Supreme Court left the states to formulate the exact procedures for parole revocation hearings. *Id.* The Court held that "the minimum requirements of due process" for a parole revocation hearing "include (a) written notice of the claimed

9

violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id*. at 489.

Here, the Parole Board's revocation of Brinson's parole did not violate due process. The summary provided from the parole revocation hearing set out Brinson's parole history, including that his parole had been extended at the time he committed, and subsequently pled guilty to, the 2023 assault and battery charges. (ECF 10-2, PageID.94-96). Brinson was provided with written notice of the alleged parole violations; the evidence supporting the charges asserted against him; an opportunity to be heard in person and to present, confront, and cross-examine witnesses and documentary evidence; a neutral and detached hearing body; and a written statement by the hearing officer as to the evidence relied upon and reasons for revoking parole. (ECF 10-2, PageID.94-96). And Brinson does not contest that he was given a formal hearing with appointed counsel to challenge the parole revocation charges.

### C. *Timeliness of the Parole Revocation Hearing*

Insofar as Brinson maintains that he was not afforded a prompt or speedy parole revocation hearing, he is not entitled to habeas relief. A parole revocation hearing must take place within a reasonable time after the parolee is taken into custody. *Morrissey*, 408 U.S. at 488. To determine whether a delay in conducting a parole revocation hearing is unreasonable, the court must consider (1) the length of the delay, (2) the reasons for the delay; (3) the alleged violator's attempts to assert the right to a timely hearing, and (4) prejudice to the alleged violator. *See Moore v. Hofbauer*, 144 F. Supp. 2d 877, 881 (E.D. Mich. 2001) (citation omitted). "No prejudice or unreasonableness is established where the delay is attributable wholly to the parolee's actions or a request for adjournment." *Wooly v Evans*, No. ED CV 08-00641-DDP(VBK), 2009 U.S. Dist. LEXIS 124368, at *12 (C.D. Cal. Feb. 11, 2009), adopted by sub nom *Wooley v. California*, No. ED CV 08-00641-DDP, 2010 U.S. Dist. LEXIS 8044, at *1 (C.D. Cal. Jan. 29, 2010); *see also Kincaid v. Lafler*, No. 07-11414, 2008 U.S. Dist. LEXIS 66897, at *11 (E.D. Mich. Aug. 28, 2008) ("[T]he delay was a result of Petitioner's request for an adjournment. Furthermore, Petitioner fails to show how he was prejudiced.).

Here, Brinson requested an adjournment of the formal hearing while he was still on an extension of parole in November 2022. The record is devoid of any

11

evidence showing that he requested a formal hearing sooner than the January 2024 formal hearing date.

Brinson also fails to establish prejudice since there is no indication that the delay prevented any favorable witness from testifying or precluded the introduction of exculpatory or mitigating evidence. *See Moore*, 144 F. Supp.2d at 881. And Brinson does not demonstrate that conducting the hearing earlier would have altered the Parole Board's ultimate decision. *Id.* Brinson is, therefore, not entitled to habeas relief on any of his due process claims.

### D.  *Certificate of Appealability*

Aside from finding that habeas relief is unwarranted the Court will also deny Brinson a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

The Court will deny Brinson a certificate of appealability because he fails to make a substantial showing of the denial of a federal constitutional right. The Court further concludes that Brinson should not be granted leave to proceed *in forma pauperis* on appeal because it would not be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus (ECF No. 1) is denied with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that Brinson may not file an appeal *in forma pauperis* because it would not be taken in good faith.

Dated: November 1, 2024              s/Robert J. White
                                                     Robert J. White
                                                     United States District Judge